356 . COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,          Carskadon vs. Johnson et al.          1870.

# Wheeling.

## JOHN R. CARSKADON vs. GEORGE H. JOHNSON et al.

### January Term, 1870.

1. A case in which the plea known as "belligerent rights," again overruled.

2. Two pleas are filed in an action of trespass, one the general issue, the other "belligerent rights;" issue is joined on both of these pleas, and the jury finds a conditional verdict for the plaintiff, subject to the opinion of the court on a demurrer to the evidence. The court below decides on this demurrer for the defendants. HELD:

> That the plea of belligerent rights being a bad plea, the issue thereon was an immaterial one, and the verdict of the jury on the general issue, finding for the plaintiff, being sustained by the evidence, should have been entered as the judgment of the court.

John R. Carskadon brought an action of trespass and assault and battery, against George H. Johnson, John T. Peerce, and Joseph L. Vandiver, in the circuit court of Preston county, to January rules, 1865. The defendants pleaded the general issue, and also a special plea usually known as belligerent rights; issue was taken on both pleas. A trial was had at the December term, 1866, and a conditional judgment rendered for the plaintiff, subject to the opinion of the court on a demurrer to evidence. The court sustained the demurrer and gave judgment for the defendants.

The plaintiff produced Isaac Caldwell, a witness, who testified that he was at New Creek station, in the county of Hampshire, State of West Virginia, at the time it was captured by general Rosser, in 1864; saw none of the defendants there, but at a subsequent time he heard the defen-

dant Johnson say he was there at that time; that he was in the road, and went with about six others towards the house of Thomas Carskadon; witness was captured and taken to Richmond as a prisoner; was captured at 11 o'clock A. M., and carried twenty-two miles that day; saw the plaintiff among the prisoners at New Creek, Hampshire county; he started off with the other prisoners; the last he saw of the plaintiff was about one mile from New Creek, and did not see him next day; witness heard no threats towards the plaintiff; the plaintiff lived about one mile from the fort at New Creek, in Hampshire county; did not know how the plaintiff came there; general Rosser was in command of the forces that captured New Creek, which was a fortified place, and had six or seven hundred soldiers in it, most of whom were captured by Rosser's command; some of them made their escape and fled; the picket lines of the United States forces were about three miles south of New Creek station, the place where said soldiers were stationed, and the residence of the plaintiff was about one mile south of said station and fort, and within the said picket lines; the pickets three miles south of New Creek was a line of videttes about a quarter of a mile apart.

Also, John Little, another witness, who testified that the plaintiff was captured at New Creek station on the 28th day of November, 1864; witness saw neither of the defendants there that day, but saw defendant Peerce afterwards, with Rosser's army, about thirty-five miles distant from New Creek, on second day after the capture; saw the plaintiff, for the first time, on the day of the capture of New Creek, about three-fourths of a mile from the fort at New Creek, in Hampshire county, West Virginia; he was then a prisoner; plaintiff was taken on foot with the other prisoners captured, and under guard, and saw him for the last time seven or eight miles distant from New Creek; the troops that captured prisoners were on horseback; the weather at the time was very cold, and had been for some time before, and the roads were very muddy, about knee-

deep; did not know what was the plaintiff's occupation at the time of his capture, but he had previously been a farmer; did not know that plaintiff was ever connected with the United States army, or acted as a scout for the same, or that he ever furnished supplies for the Federal army, that witness knew of.

Also, James Carskadon, another witness, who testified that he and his brother, the plaintiff, were at the time of the capture of New Creek, living with his brother Thomas, as refugees, about one mile from New Creek station; witness heard that general Rosser was coming, and gave information to Colonel Latham, the commander of the United States forces at New Creek, that such was the rumor; shortly afterwards, whilst standing on the porch at his brother Thomas' house, where he and the plaintiff were living at the time, he saw soldiers coming down the creek in the direction of New Creek, and called the plaintiff to see them, thinking they were our troops, because those in front were dressed in Federal uniform; he and the plaintiff remained looking at them pass, until nearly half the column had passed toward New Creek, when he discovered some five or six of them flanking off to the right; he then remarked to the plaintiff that they were sold, the soldiers were rebels, and that he and the plaintiff both fled into the house and concealed themselves; the plaintiff was discovered in the house by said soldiers, and was arrested by them, and carried away; witness did not know any of the soldiers who captured and took away the plaintiff, but that afterwards, about one or two hours, he heard from the house in which he was concealed, the voice of the defendant Peerce, hallowing at horses or cattle about one or two hundred yards distant, as he supposed; that he could not tell the distance accurately from the sound; that soon after he fled and concealed himself, he saw the smoke arising from New Creek, occasioned by the burning of the buildings, as he supposed, and saw the confederate troops scattered over the field; that he and plaintiff were living inside of the military lines of

the United States for protection; that New Creek was a
military post, was fortified, and was garrisoned by about
1,100 or 1,200 United States soldiers; that he did not know
what sort of a hat plaintiff had on when he was captured,
but did know that he did not come back with the same on
he had when captured; plaintiff was never in any way con-
nected with the army of the United States, either as a scout
or otherwise, so far as witness knew; he never was a con-
tractor for the army, or engaged in furnishing supplies, so.
far as witness knew; plaintiff is by occupation a farmer;
at the time of his capture he was a refugee from his home
and business, and was residing with his brother within the
Federal lines to avoid being captured by the rebels; that
his, the plaintiff's, residence was in Hampshire county,
West Virginia.

Also Joseph V. Williams, another witness, who testified,
that the defendants were at New Creek at the time it was
captured by general Rosser; that they were all soldiers of
the confederate states army at that time, and were attached
and belonged to the brigade commanded by said general
Rosser, and constituted a part of said brigade; that they
went to New Creek as such soldiers, with general Rosser's
brigade, and under his command, to capture New Creek,
and did capture it; that general Rosser was present, and in
command of his brigade, at the time it attacked and cap-
tured New Creek; that general Rosser, whilst on the way
to New Creek, and at some distance from it, ordered a squad
of soldiers to capture the Carskadons. He selected the de-
fendant Vandiver, and ordered him to take the squad to
make the capture, and afterwards, when they got near the
house of Thomas Carskadon, to charge the house and arrest
the Carskadons. Defendants, Vandiver and Johnson, were
in the squad who captured the plaintiff; that the said Thos.
L. Rosser was a brigadier general of the army of the con-
federate states at the time, and had been for a long time
before acting as such; that his brigade was, at the time, a
part of the army of northern Virginia, commanded by

360     COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,          Carskadon vs. Johnson et al.          1870.

general Robert E. Lee, and had before been under the immediate command of general Thomas J. Jackson, of the confederate army; that the defendants, Peerce and Vandiver, had been in the army of the confederate states, as soldiers, for about three years, or more, and the defendant Johnson, for about twelve months. Peerce and Johnson belonged to the same company that witness did; Peerce was absent from the company much of the time, on detached duty as a scout; that the object in arresting the Carskadons was to hold them as hostages for a Mr. Parker, the father-in-law of one of the Carskadons; witness saw defendant Vandiver hand pocket-book, with some ten or twelve dollars in it, to some one for the plaintiff, which he said he had taken from him.

It was admitted by the plaintiff, in court, to the jury, that he was a citizen of the United States, and claimed to owe his allegiance to the United States government, and to have discharged all his duties to it as a private citizen, but in nowise connected with the military service thereof, and did not acknowledge any allegiance to the confederate states, so-called, but repudiated the same.

The defendants then gave in evidence the act of Congress of the United States, entitled "an act further to provide for the collection of duties on imports, and for other purposes," approved July 13th, 1861.

The defendants also gave in evidence the proclamation of the president of the United States, made on the 2d day of April, 1863; also a proclamation made 20th of April, 1863.

The plaintiff brought the case here for review.

Hon. John A. Dille, judge of the circuit court of Preston county, presided on the trial of the case.

*Stanton & Allison* for the plaintiff in error.
*Boggess* for the defendants in error.

BROWN, *President.*

This was an action of trespass, assault and battery, and imprisonment, to which there was the pleas of not guilty, and a special plea of belligerent rights, as it is commonly called, and was as follows:

"And the said defendants, for further plea in this behalf, by leave of the court, first had and obtained say, that at the time when, &c., in the plaintiff's declaration mentioned, a civil war existed, and was being carried on between the government of the United States and a government styling itself the confederate states of America; that before the said term when, &c., the government of the United States, by the President's proclamation of the 19th and 27th of April, 1861, and the act of Congress of the 13th of July, 1861, recognized that the said war, then being so carried on between the said hostile parties, was a civil war, and that at the said time when, &c., the said plaintiff was a citizen of West Virginia, recognized and claimed by the said government of the United States to be a loyal State thereof; that he claimed to owe allegiance to the said United States, and an enemy of the said confederate states, residing in the county of Hampshire, in said State, within the territory held and occupied by said United States, and at New Creek, which was then held and occupied by the armies of the said United States as a fortified military post; that the territorial boundaries of the said hostile parties was marked by a line of bayonets, (and before the formation of the State of West Virginia); that on the — day of ——, 1862, the said defendants, and each of them, had enlisted as soldiers in the said army of the said confederate states, and from that time continued to be and act as such soldiers in said army, until at the said time when, &c., and were then under the command of brigadier general Thos. L. Rosser, an officer of the army of the said confederate states, and commanding the brigade of said army to which they were assigned, and attached as such soldiers in the confederate army, and of which they then made a part; that at the time when, &c., the said gen-

eral Rosser made an incursion with his brigade into the said county of Hampshire, and attacked and captured the said fortified military post at New Creek, then held and occupied by the said United States, and drove said forces there from the said post, then being within the territory held by the said United States, and said defendants aver that the said plaintiff was then in the said territory then held by said United States, and also near to the fortified military post thus held by the said United States, and thus captured as aforesaid, by the forces under the command of said general Rosser, of which the said defendants formed a part; that the said general Rosser, at the said time when, &c., then so being in command of said forces, ordered and commanded the said defendants, and other members of his said command, then and there to seize and arrest the said plaintiff, and detain him as a prisoner; and the said defendants aver that under and by virtue of said order and command of the said general Rosser, they did seize, arrest, and carry away, and imprison the said plaintiff, using no more force, or restraint, than was necessary therefor, as they lawfully might do, which is the same supposed trespass in said plaintiff's declaration mentioned, and without this they committed no other or further trespass, and this they are ready to verify."

On the plea of not guilty there was issue, and to the special plea, there was a general replication and issue. Then there was a demurrer by the defendants to the evidence and joinder. The jury ascertained the damages, and further found for the plaintiff or defendants as the law upon the demurrer to the evidence might be determined by the court, for the one or the other. And the only question controverted, requiring consideration, is whether the special plea of belligerent rights constituted a defence to the action.

In the case of *Hood* vs. *Maxwell*, 1 W. Va. Rep., 219, it was held that the defendant in trespass, for taking, in May, 1861, the plaintiff's property, to be used in aid of the rebellion, could not justify the taking under the orders of gov-

ernor Letcher, because the orders of the governor then, and
in that particular, were as illegal as the acts of the defen-
dants.    In *Hedges* vs. *Price*, 2 W. V. R., 192, and *Williams*
vs. *Freeland, Idem*, 306, it was held that, the defence of bel-
ligerent rights, under which the defendants as rebel soldiers,·
or acting under the authority and orders of rebel officers,
claimed immunity from liability for trespasses committed
in aid of the rebellion, could not justify the trespass, nor
bar the plaintiff's recovery.

In the case of *Lively, Ex'or*, vs. *Ballard*, 2 W. V. R., 496,
it was again held that the plea of belligerent rights, in be-
half of rebels acting under confederate military authority,
to a trespass in July, 1861, in the county of Monroe, was
not sufficient to bar the plaintiff from recovering.    In the
case of *Echols* vs. *Stantons*, 3 W. V. Rep., 574, it was held,
not only that a party could not justify a trespass under the
plea of belligerent rights, who committed the act as a rebel
soldier or subaltern officer, but that the rebel general who
commanded the military forces at the post, at the time and
place the seizure was made, and by whose orders the pro-
perty was taken, and appropriated in aid of the rebellion,
was also guilty as a trespasser, and responsible to the owner
for the same.    In the case of *Caperton* vs. *Martin, infra*, the
whole subject of belligerent rights as a defence to trespas-
ses committed in aid of the late rebellion, and under the
authority of the so-called confederate government was, by
leave of the court, again reargued, elaborately, and the
doctrine declared in the cases above recited, reaffirmed.
After these repeated decisions, it is too late to question
that the special plea of belligerent rights presented no de-
fence to the action, and the replication to it presented an
immaterial issue.

The only material issue, therefore, in the cause, was the
general issue,   which the evidence fully sustains for the
plaintiff.   The judgment, therefore, upon the demurrer to
the evidence, should have been for the plaintiff, for the
amount of the damages assessed by the jury, notwithstand-

ing the immaterial issue raised by the replication to a bad plea. *Urton* vs. *Hunter* 2 W. V. R., 83; *Trimble* vs. *Shaffer*, 3 W. V. R., 614.

This view of the case renders it unnecessary to notice the other points argued in the cause, as they cannot again occur in it. I think, therefore, that the judgment of the circuit court should be reversed with costs to the plaintiff in error, and judgment entered here for the plaintiff for 450 dollars, the amount ascertained by the verdict of the jury, with interest thereon from December 21st, 1866, till paid, and costs in the court below.

The other judges concurred.

JUDGMENT REVERSED.